1 | JEFFREY A. TOPOR (SBN 195545)
jtopor@snllp.com
2 | CHRISTOPHER SPAIN (SBN 265465)
cspain@snllp.com
3 | SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
4 | San Francisco, CA 94104-4816
Telephone: (415) 283-1000
5 | Facsimile:   (415) 352-2625

6

7 | Attorneys for defendant
Cavalry Portfolio Services, LLC

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | JANET NIKOGOSIAN,                    ) CASE NO.: 12-CV-00464-RGK-AJW
12 |                                      )
   |                                      )
13 |            Plaintiff,               ) **DEFENDANT CAVALRY**
   |                                      ) **PORTFOLIO SERVICES, LLC's**
14 |         vs.                         ) **NOTICE OF MOTION AND**
   |                                      ) **MOTION TO DISMISS**
15 |                                      ) **COMPLAINT; MEMORANDUM**
   |                                      ) **OF POINTS AND AUTHORITIES**
16 | CAVALRY PORTFOLIO                    ) **IN SUPPORT OF MOTION**
   | SERVICES, LLC, A Delaware           )
17 | Limited Liability Company,          ) Date: June 25, 2012
   |                                      ) Time: 9:00 a.m.
18 |           Defendant.                ) Courtroom: 850
   |                                      )
19 | ————————————————                    ) The Honorable R. Gary Klausner

20

21

22

23

24

25

26

27

28

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that on Monday, June 25, 2012 at 9:00 a.m. in courtroom number 850 of the above Court, located at 255 E. Temple Street, Los Angeles, California 90012, the Honorable R. Gary Klausner presiding, defendant Cavalry Portfolio Services, LLC ("Portfolio") will and hereby does move this Court for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the claims against it in the complaint.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by letter on May 11, 2012 after counsel for Defendant was unable to contact Plaintiff by telephone.  A copy of the May 11, 2012 letter is attached hereto as "**Exhibit A.**"  This motion is made on the grounds that the complaint fails to state facts sufficient to constitute a cause of action against Cavalry under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*.; the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*; the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785, *et seq*.; or for defamation, libel, or invasion of privacy.

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, all of the other papers on file in this action, and such other and further evidence or argument as the Court may allow.

DATED:  May 18, 2012                     SIMMONDS & NARITA LLP
                                         JEFFREY A. TOPOR
                                         CHRISTOPHER SPAIN


                                         By:  /s/Jeffrey A. Topor
                                         _____
                                         Jeffrey A. Topor
                                         Attorneys for defendant
                                         Cavalry Portfolio Services, LLC

# TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.   ALLEGATIONS OF THE COMPLAINT  . . . . . . . . . . . . . . . . . . . . . . . . . .   2

III.   ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

   A.   Legal Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

   B.   Nikogosian Has Failed To Plead The Essential Elements Of An
        FDCPA Or Rosenthal Act Claim  . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

   C.   Nikogosian Has Failed To Plead Facts Sufficient To State A
        Claim Under The FDPCA And The Rosenthal Act  . . . . . . . . . . . . .   7

   D.   Nikogosian Has Pled Herself Out Of Her FCRA Claim   . . . . . . . .   10

   E.   Nikogosian's Claim Under The CCRAA Fails Because Cavalry
        Is Not A Consumer Credit Reporting Agency   . . . . . . . . . . . . . . . .   13

   F.   Nikogosian's Common-Law Claims Fail Because She Has Not
        Alleged That Cavalry Published Any Information About Her   . . . .   14

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*Aquino v. Capital One Fin. Corp.*,
2008 WL 1734752  (N.D. Cal. Apr. 14, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Baker v. Trans Union LLC*,
2010 WL 2104622 (D. Ariz. May 25, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Becker v. Genesis Fin. Servs.*,
2007 WL 4190473 (E.D. Wa. Nov. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Blair v. Bank of Am., N.A.*,
2012 WL 860411 (D. Or. Mar. 13, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Breese v. TRIADvantage Credit Servs., Inc.*,
393 F. Supp. 2d 819 (D. Minn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Conley v. Gibson*,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dokumaci v. MAF Collection Servs.*,
2010 WL 2560024 (M.D. Fla. June 17, 2010) . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*FIA Card Servs., N.A. v. Gorman*,
131 S. Ct. 71 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gamble v. Citifinancial and Landers*,
2002 WL 31643028 (D. Conn. Nov. 19, 2002)  . . . . . . . . . . . . . . . . . . . . . . . 11

*Golden v. Wisconsin Physician's Serv. Health Ins. Corp.*,
2010 WL 5289682 (E.D. Cal. Dec. 16, 2010)  . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Great Seneca Fin. Corp. v. Fisher*,
2005 WL 1875664 (D. Kan. Aug. 8, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hyde v. RDA, Inc.*,
389 F. Supp. 2d 658 (D. Md. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Johnson v. Riverside Healthcare Sys., L.P.*,
534 F.3d 1116 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McNall v. Credit Bureau of Josephine County*,
689 F. Supp. 2d 1265 (D. Or. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Miller v. Rubin & Rothman, LLC*,
2011 WL 4359977 (D. Minn. Sept. 19, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Moss v. United States Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Murray v. Sunrise Chevrolet, Inc.*,
441 F. Supp. 2d 940 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Myers v. Stoneleigh Recovery Assocs.*,
2012 WL 1356752 (E.D. Cal. Apr. 18, 2012) . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Pretlow v. AFNI, Inc.*,
2008 WL 345593 (W.D. Va. Feb. 7, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Riley v. Equifax Credit Info. Servs., Inc.*,
194 F. Supp. 2d 1239 (S.D. Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rodriguez v. Cavalry Portfolio Servs., LLC*,
2012 WL 726474 (S.D. Cal. Mar. 6, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stejic v. Aurora Loan Servs., LLC*,
2009 WL 4730734 (D. Ariz. Dec. 1, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stergiopoulos v. First Midwest Bancorp., Inc.*,
2004 WL 5550488 (N.D. Ill. June 23, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Washington v. South Shore Bank*,
2004 WL 2038425 (N.D. Ill. Aug. 27, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Wilson v. Sessoms*,
1998 WL 35305548 (M.D.N.C. Mar. 16, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATE CASES**

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
203 Cal. App. 450 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Price v. Operating Eng'rs Local Union No. 3*,
195 Cal. App. 4th 962 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL STATUTES**

Fair Credit Reporting Act ("FCRA"),
　　15 U.S.C. §§ 1681, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
　　15 U.S.C. § 1681(a), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　15 U.S.C. § 1681a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
　　15 U.S.C. § 1681(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　15 U.S.C. § 1681b(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　15 U.S.C. § 1681b(a)(3)(A-F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
　　15 U.S.C. § 1681b(a)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12
　　15 U.S.C. § 1681b(f)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fair Debt Collection Practices Act,
　　15 U.S.C. § 1692 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
　　15 U.S.C. § 1692a(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
　　15 U.S.C. § 1692a(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
　　15 U.S.C. § 1692d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
　　15 U.S.C. § 1692e(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　15 U.S.C. § 1692e(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
　　15 U.S.C. § 1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9
　　15 U.S.C. § 1692e(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9
　　15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10
　　15 U.S.C. § 1692g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9
　　15 U.S.C. § 1692g(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9
　　15 U.S.C. § 1692g(a)(3, 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure,
　　Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 16

**STATE STATUTES**

California Civil Code,
　　Cal. Civ. Code § 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

California Consumer Credit Reporting Agencies Act,
　　Cal. Civ. Code §§ 1785, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
　　§ 1785.3(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
　　§ 1785.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
　　§§ 1785.11(a, b, c, e, f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rosenthal Fair Debt Collection Practices Act,
　　Cal. Civ. Code § 1788 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
　　§ 1788.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
　　§ 1788.2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
　　§ 1788.2(e, f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
　　§ 1788.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## OTHER AUTHORITIES

16 C.F.R. Pt. 600, App (2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts,
    § 529, p. 782  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Rest.2d Torts, § 652E  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   **INTRODUCTION**

This is one of a multitude of identical, meritless lawsuits currently inundating this Court, brought by a group of *pro se* plaintiffs living within fifteen miles of each other in Glendale, California.[1]  Although the complaint sets forth a lengthy recitation of various provisions of federal and state laws governing debt collection and credit reporting, replete with citation to judicial opinions, it contains but a single material factual allegation.

Specifically, Plaintiff Janet Nikogosian ("Nikogosian") alleges that defendant Cavalry Portfolio Services, LLC ("Cavalry") "pulled and reviewed" her credit report without her knowledge or permission, and then ignored her request that it explain why it did so.  Nikogosian knows perfectly well why Cavalry would have pulled her credit report: as she alleges in her complaint, it would have done so because it was trying to collect a debt from her.  This allegation fatally undermines the only plausible claim in Nikogosian's complaint.

Nikogosian claims that Cavalry lacked a permissible purpose for accessing her credit report and therefore it violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*; the California Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*; the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785, *et seq.*; and defamed her and invaded her privacy.  Nikogosian's complaint must be dismissed because it fails to state a claim upon which relief can be granted.

---

[1]   Counsel for defendant is presently defending approximately two dozen lawsuits brought by these plaintiffs against eight different defendants.

Save for a few specific allegations regarding Nikogosian's discovery that Cavalry pulled her credit report, her subsequent correspondence to Cavalry, and its alleged failure to respond to her letters, Nikogosian's complaint sets forth nothing more than a formulaic recitation of the language of various statutes and common-law causes of action, unsupported by any concrete factual allegations. To the extent that she has set forth specific facts, Nikogosian has pled herself out of her FCRA claim or has no claims based on those allegations. Beyond that, her conclusory allegations do not state a valid claim for relief under the statutes or common-law provisions she cites in her complaint. Consequently, the complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Unless Nikogosian can explain how she can plausibly amend the complaint to state a valid claim, the complaint should be dismissed with prejudice and without leave to amend.

## II.    **ALLEGATIONS OF THE COMPLAINT**

Nikogosian alleges that in March 2011, she discovered that Cavalry had "pulled and reviewed" her credit report on November 3, 2010 without her "knowledge and authorization." Complaint (Doc. No. 3) at 8:12-14.[2] Significantly, Nikogosian also alleges that Cavalry is "a collection agency . . . in the business of collecting consumer debts," and that "at some point [it] must have tried to purchase debts alleged to be owed by Plaintiff, considered purchasing debts alleged to be owed by Plaintiff, or looked into Plaintiff's history as a potential debtor for overdue account balances to collect on." *Id.* at 8:15-22.

Nikogosian further alleges that after discovering Cavalry had reviewed her credit report, she wrote to the company "requesting deletion of the hard credit

---

[2] As the Complaint often repeats paragraph numbers, Cavalry will cite to the complaint by page and line number.

inquiry from [her] credit file; that Cavalry "failed to answer [her] request and failed to delete the credit inquiries"; that she sent Cavalry a letter "addressing its failure to respond or take appropriate corrective action with respect to [her] initial of dispute" as well as a "letter of notice of all its violations [sic]"; and that despite her letters, Cavalry "continues to maintain the record of unauthorized credit inquiry on [her] credit records." *Id.* at 10:7-20.

By allegedly accessing her credit report without her knowledge or permission – "without having a permissible purpose," *id.* at 8:23-27 – and by failing to respond to her correspondence, Nikogosian contends that Cavalry violated numerous laws. First, she claims it violated the FDCPA and the Rosenthal Act. *See id.* at 11:9-12:9. Second, she claims it violated the FCRA and the CCRAA. *See id.* at 12:12-13:11. Third, she claims it defamed her. *See id.* at 13:14-14:4. Finally, she claims it invaded her privacy. *See id.* at 14:6-21.

## III.   ARGUMENT

### A.   Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure provide little guidance on what a plaintiff must do to "state a claim" for relief, other than Rule 8, which says that a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*

The Supreme Court decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*") represent a significant shift in the analytical framework that courts must use when evaluating motions to dismiss. In *Twombly*, the Court expressly rejected the "no set of facts" test that had been articulated in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Twombly*, 550 U.S. at 562-63. The Court clarified that although

"detailed factual allegations" are not required at the pleading stage, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  The complaint must contain factual allegations, and they "must be enough to raise a right to relief above the speculative level." *Id.*  There must be sufficient facts pled to state a claim to relief that is "plausible on its face." *Id.* at 570.

The Supreme Court refined its analysis even further in *Iqbal*, reiterating that Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Only a complaint that states "a plausible claim for relief" can survive a motion to dismiss.  *Id.* at 679.  "A claim has facial plausability when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausability standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  A complaint that contains facts which are "merely consistent with" defendant's liability is not sufficient, because it "stops short of the line between possibility and the plausibility of entitlement to relief.  *Id.*  (citations and quotation marks omitted).

The court should not assume the truth of legal conclusions in the complaint. *Id.*  Thus, the first step when evaluating a motion to dismiss is to identify the legal conclusions, because they "are not entitled to the assumption of truth.  While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id.* at 679.  Next, with respect to any "well-pleaded factual allegations" in the complaint "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The determination of whether a plausible claim for relief has been stated is "a context-specific task" that requires a court to "draw on its judicial experience and common sense." *Id.*

Dismissal is therefore proper under Rule 12(b)(6) where a court finds either: 1) the lack of a cognizable legal theory; or 2) the absence of sufficient facts alleged under a cognizable legal theory. *See Johnson v. Riverside Healthcare Sys., L.P.*, 534 F.3d 1116, 1121 (9th Cir. 2008). As the Ninth Circuit has observed: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Nikogosian has not pled facts sufficient to support a plausible claim for relief against Cavalry under any of the statutory provisions cited in her complaint or for any of her common-law causes of action, consistent with the pleading requirements of Rule 8 and the decisions in *Iqbal* and *Twombly*. The complaint must be dismissed.

**B.    Nikogosian Has Failed To Plead The Essential Elements Of An FDCPA Or Rosenthal Act Claim**

In her first two causes of action, Nikogosian contends that Cavalry violated the FDCPA and the Rosenthal Act. *See* Complaint (Doc. No. 3) at 11:9-12:9. To state a claim under the FDCPA, a plaintiff must not only identify the applicable section of the FDCPA under which relief is sought, but must allege facts showing that the different elements of the cause of action are satisfied. *See, e.g., Dokumaci v. MAF Collection Servs.*, 2010 WL 2560024, *1 (M.D. Fla. June 17, 2010) ("In order to state a claim under the FDCPA, a plaintiff must show: (1) that he has been subject to collection activity arising from a consumer debt; (2) that the defendant is a debt collector as defined by the FDCPA; and (3) that the defendant has participated in an act or omission prohibited by the FDCPA."). Accordingly, "[t]o state a claim for violation of the Fair Debt Collection Practices Act, a plaintiff must allege, *inter alia*, that . . . the defendant collecting the 'debt' is a

'debt collector' . . . ." *Aquino v. Capital One Fin. Corp.*, 2008 WL 1734752, *1 (N.D. Cal. Apr. 14, 2008) (internal quotation marks omitted; ellipses in original); *see Dokumaci*, 2010 WL 2560024 at *1.

Although she asserts that Cavalry is a "debt collector" within the meaning of the FDCPA and the Rosenthal Act,[3] *see* Complaint (Doc. No. 3) at 7:3-4, Nikogosian has not alleged facts sufficient to support this assertion.  In other words, her unsupported assertion is nothing more than a bald legal conclusion, which is insufficient.  *See Stejic v. Aurora Loan Servs., LLC*, 2009 WL 4730734, *3 (D. Ariz. Dec. 1, 2009) (holding that "Plaintiff's legal conclusion that [defendant] . . . is a debt collector is insufficient to survive dismissal"); *Golden v. Wisconsin Physician's Serv. Health Ins. Corp.*, 2010 WL 5289682, **7-8 (E.D. Cal. Dec. 16, 2010) (dismissing Rosenthal Act claim where plaintiff failed to set forth facts suggesting that defendant was debt collector).  Nor has Nikogosian alleged that Cavalry was attempting to collect a "debt" within the meaning of the FDCPA,[4] or a "consumer debt" within the meaning of the Rosenthal Act,[5] which

---

[3]  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Similarly, the Rosenthal Act defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).  "Debt collection" is "any act or practice in connection with the collection of consumer debts."  *Id.* § 1788.2(b).

[4]  For purposes of the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ."  15 U.S.C. § 1692a(5).  The Rosenthal Act contains a similar definition.  *See* Cal. Civ. Code § 1788.2(e, f).

[5]  *See* n.5, *supra*.

are elements of each of her FDCPA and Rosenthal Act claims.[6]  *See Dokumaci*,

2010 WL 2560024 at *2; *Golden*, 2010 WL 5289682 at *8.  Consequently,

Nikogosian 's FDCPA and Rosenthal Act claims must be dismissed.

### C.   Nikogosian Has Failed To Plead Facts Sufficient To State A Claim Under The FDPCA And The Rosenthal Act

Even if Nikogosian had alleged that Cavalry was a "debt collector" and that

it was seeking to collect a "debt," the conclusory statements contained in her

complaint are insufficient to allege a cognizable claim under the FDCPA or the

Rosenthal Act.  Although Nikogosian  has identified various sections of the

FDCPA and the Rosenthal Act she claims Cavalry violated, she has failed to set

forth any facts that might satisfy the elements of those claims.

Thus, Nikogosian merely alleges that Cavalry:

1)   failed to provide her "notice of debts . . . complete with all required disclosures, per 15 U.S.C. § 1692e(11)";

2)   failed to provide her "written notices of [her] right to verification and information about [her] alleged debts, per 15 U.S.C. § 1692g(a)";

3)   used "false representations and deceptive means to collect or attempt to collect an [sic] alleged debts, in violations [sic] of 15 U.S.C. § 1692e(10)"; and,

4)   used "unfair and/or unconscionable means to collect an [sic] alleged debts, in violation of 15 U.S.C. § 1692f."

Complaint (Doc. No. 3) at 11:11-20.  Similarly, she alleges that Cavalry violated

section 1788.17 of the Rosenthal Act by "[u]sing false representations and

deceptive means to collect or attempt to collect alleged debts" and "[u]sing unfair

and/or unconscionable means to collect alleged debts."  *See id.* at 11:27-12:4.

---

[6]  Nikogosian contends that Cavalry violated sections 1692e(10), 1692e(11), 1692(f) and 1692g(a) of the FDCPA.  *See* Complaint (Doc. No. 3) at 11:11-20.  Each of these provisions govern the behavior of debt collectors when attempting to collect "any debt."  *See* 15 U.S.C. §§ 1692e, 1692f & 1692g.  She also contends that Cavalry violated section 1788.17 of the Rosenthal Act.  *See* Complaint (Doc. No. 3) at 11:27-12:4.  That provision incorporates by reference the various provisions of the FDCPA that Nikogosian claims Cavalry violated.  *See* Cal. Civ. Code § 1788.17.

These conclusory statements, which simply parrot the language of the FDCPA, are insufficient to allege a cognizable claim under the FDCPA or the Rosenthal Act.

Section 1692g(a) of the Act mandates that a debt collector must provide the consumer with a written notice setting forth the consumer's right to dispute the debt "[w]ithin five days after its initial communication with a consumer in connection with the collection of any debt," or "in the initial communication" itself. *See* 15 U.S.C. § 1692g(a).[7] The plain language of the FDCPA provides that a collector need not send the section 1692g notice until five days <u>after</u> the collector has actually had the first "communication" directly "with a consumer" concerning the debt. The Act is crystal clear on this point: it does not say the notice must be provided within five days of any "attempted" communication with the consumer, nor does it say the notice must be given within five days of a communication with a third party. The notice is not required until five days after the collector actually communicates "with a consumer" in connection with an attempt to collect.

Section 1692e(11) of the FDCPA requires a debt collector "to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained

---

[7] The notice must convey, *inter alia*, the following:

(3)   a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)   a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(a)(3, 4).

will be used for that purpose, and . . . to disclose in subsequent communications that the communication is from a debt collector . . . ." 15 U.S.C. § 1692e(11). Like section 1692g, the notice is only required when the debt collector actually communicates with the consumer.

Nikogosian's claims under sections 1692g(a) and 1692e(11) fail because she has not alleged that Cavalry ever communicated with her. Given this, the notice requirements of those two provisions were never triggered, and the claims fails as a matter of law. *See Pretlow v. AFNI, Inc.*, 2008 WL 345593, *1 (W.D. Va. Feb. 7, 2008) ("Moreover, the validation provision of § 1692g is triggered only by the consumer's receipt of the formal 'written notice' that the debt collector is required to send under § 1692g(a). Plaintiffs' have not alleged that they received any communications from Defendant which would form the basis of a debt validation claim.").

Section 1692e(10) prohibits debt collectors from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Nikogosian has not described any efforts that Cavalry allegedly took to try to collect a debt from her, let alone any false, deceptive, unfair or unconscionable efforts.[8] This is wholly insufficient. *See, e.g., Myers v. Stoneleigh Recovery Assocs.*, 2012 WL 1356752,

_____

[8] The only conduct Nikogosian complains of is Cavalry's alleged review of her credit report and its alleged failure to respond to her request that explain why it did so. As explained below, a debt collector may "pull" a credit report in connection with attempting to collect a debt, which Nikogosian alleges Cavalry did here. Nothing in the FDCPA or the Rosenthal Act prohibited Cavalry from accessing Nikogosian's credit report or required it to explain why it did so. *Cf. Becker v. Genesis Fin. Servs.*, 2007 WL 4190473, * (E.D. Wa. Nov. 21, 2007) (accessing credit report does not violate § 1692e(8) of FDCPA, because does not communicate information about debt to credit reporting agency).

**4-5 (E.D. Cal. Apr. 18, 2012) (granting motion to dismiss claims under §§ 1692d, 1692e(5) and 1692f where plaintiff merely recited elements of statutes and did not allege any facts in support of claims).  Nikogosian's FDCPA and Rosenthal Act claims must be dismissed.

### D.     Nikogosian Has Pled Herself Out Of Her FCRA Claim

In her "Third Claim For Relief," Nikogosian asserts that Cavalry violated the FCRA by accessing her credit report without a "permissible purpose." Complaint (Doc. No. 3) at 12:12-12:27.  Congress passed the FCRA as part of its efforts to balance the legitimate needs of users of consumer information (like Cavalry) with its concern for protecting consumer privacy.  *See* 15 U.S.C. §§ 1681(a), (b); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153-54 (9th Cir. 2009), *cert. denied sub nom FIA Card Servs., N.A. v. Gorman*, 131 S. Ct. 71 (2010).  The FCRA was aimed at curbing the industry's worst abuses – it was not designed to prohibit all access to a consumer's credit file.  "The Fair Credit Reporting Act . . . was 'a product of political compromise enacted for the specific purpose of curbing only the *worst abuses* by the credit reporting industry and its clients."  *See Riley v. Equifax Credit Info. Servs., Inc.*, 194 F. Supp. 2d 1239, 1244 (S.D. Ala. 2002) (quoted citation omitted and emphasis added).

To further these competing interests, the FCRA governs how consumer credit information may be gathered, disseminated and used.  A "consumer reporting agency ["CRA"] may furnish a consumer report" if the consumer provides written permission.  *See* 15 U.S.C. § 1681b(a)(2).  A consumer's consent to the release and use of the information, however, is not required.  *See Hyde v. RDA, Inc.*, 389 F. Supp. 2d 658, 663 n.1 (D. Md. 2005).

Instead, "[t]he FCRA allows a party to obtain a consumer credit report without the consumer's consent or knowledge if that party certifies that the report is being pulled for a permissible purpose."  *Stergiopoulos v. First Midwest Bancorp., Inc.*, 2004 WL 5550488, *2 (N.D. Ill. June 23, 2004), *aff'd* 427 F.3d

1043 (7th Cir. 2005); *accord Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940, 945 (N.D. Ill. 2006) ("Under FCRA, a consumer's credit report may only be obtained with the consumer's written consent **or** for certain permissible purposes." (emphasis added)); *Gamble v. Citifinancial and Landers*, 2002 WL 31643028, *2 (D. Conn. Nov. 19, 2002) ("Under the FCRA, there are circumstances pursuant to which a consumer's credit report may be obtained without the consent or even the knowledge of the complaint."); 16 C.F.R. Pt. 600, App (2005) ("When permissible purposes exist, parties may obtain, and consumer reporting agencies may furnish, consumer reports without the consumers' permission or over their objection.").  Congress set forth six permissible purposes under which a CRA may furnish a consumer report.  *See* 15 U.S.C. § 1681b(a)(3)(A-F).

As relevant here, the FCRA provides that a CRA may "furnish a consumer report . . . [t]o a person[9] which it has reason to believe":

> intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review *or collection of an account of, the consumer*;

*Id.* § 1681b(a)(3)(A) (italics added).  A "person" may "use or obtain a consumer report" if the report "is obtained for a purpose for which a consumer report is authorized to be furnished under this section."  *Id.* § 1681b(f)(1).

Taken together then, sections 1681b(a)(3)(A) and 1681b(f)(1) permit "persons who intend to use credit information to collect a debt owed by the consumer" to obtain and use consumer reports from CRAs, even if the consumer has not consented to the release of the report.  *See Baker v. Trans Union LLC*, 2010 WL 2104622, *7 (D. Ariz. May 25, 2010); *see also Great Seneca Fin. Corp.*

---

[9]   A "person" is "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b).

*v. Fisher*, 2005 WL 1875664, *2 (D. Kan. Aug. 8, 2005) (creditor may obtain consumer report under § 1681b(a)(3)(A) "without the debtor's permission if the creditor 'intends to use the information in connection with . . . review or collection" of consumer's account).[10] "'Whether a permissible purpose existed is a question of law.'" *Miller v. Rubin & Rothman, LLC*, 2011 WL 4359977, *3 (D. Minn. Sept. 19, 2011), quoting *Breese v. TRIADvantage Credit Servs., Inc.*, 393 F. Supp. 2d 819, 821 (D. Minn. 2005).

Debt collection and "skip tracing" – which are the only reasons that Cavalry would have accessed Nikogosian's credit report – are both permissible purposes under section 1681b(a)(3)(A) of the Act. *See Blair v. Bank of Am., N.A.*, 2012 WL 860411, *9 (D. Or. Mar. 13, 2012) (permissible to access credit report in connection with collection of debt); *Rodriguez v. Cavalry Portfolio Servs., LLC*, 2012 WL 726474, *1 (S.D. Cal. Mar. 6, 2012) ("A debt collector may access a consumer's credit report in the course of collecting a credit card debt from that consumer."); *Baker*, 2010 WL 2104622 at *7 ("Because skip-tracers are in the business of locating debtors to facilitate the collection of debts by creditors," the court explained, "their practices fall within the scope of permissible purposes under § 1681b(a)(3)(A)."); *McNall v. Credit Bureau of Josephine County*, 689 F. Supp. 2d 1265, 1273 (D. Or. 2010) (rejecting argument that "running a credit report to obtain" consumer's address was not a permissible purpose); *Great Seneca Fin. Corp.*, 2005 WL 1875664 at *2; *Washington*, 2004 WL 2038425 at *5; *Wilson v. Sessoms*, 1998 WL 35305548, *4 (M.D.N.C. Mar. 16, 1998) (recognizing that skip tracing "is generally a permissible purpose under the

---

[10] Even persons who merely desire to determine whether a debt is collectible may obtain and use a consumer report under section 1681b(a)(3)(A). *See Washington v. South Shore Bank*, 2004 WL 2038425, *5 (N.D. Ill. Aug. 27, 2004) (concluding that "obtaining a credit report to determine . . . whether a creditor should even pursue a delinquent debt" is a permissible purpose).

FCRA").

Nikogosian pled herself out of her FCRA claim. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.  (plaintiff can "plead himself out of a claim by including . . . details contrary to his claim"), *amended by* 275 F.3d 1187 (9th Cir. 2001).  In her complaint, she explicitly alleges that Cavalry is "a collection agency . . . in the business of collecting consumer debts," and that Cavalry pulled her credit report in connection with an effort to collect a debt she owed: "[A]t some point [Cavalry] must have tried to purchase debts alleged to be owed by Plaintiff, considered purchasing debts alleged to be owed by Plaintiff, or looked into Plaintiff's history as a potential debtor for overdue account balances to collect on."  Complaint (Doc. No. 3) at 8:15-22.  Where a plaintiff alleges that a defendant pulled a credit report without a permissible purpose, but also alleges that the defendant is a debt collector and was attempting to collect a debt, the plaintiff has failed to state a claim.  *See Myers*, 2012 WL 1356752 at **5-6.  Nikogosian's FCRA claim must be dismissed.

### E.    Nikogosian's Claim Under The CCRAA Fails Because Cavalry Is Not A Consumer Credit Reporting Agency

Next, Nikogosian claims that Cavalry violated section 1785.11 of the CCRAA by accessing her credit report without a "permissible purpose." Complaint (Doc. No. 3) at 13:2-11.  This claim must be dismissed because Cavalry is not subject to section 1785.11.  Rather, that provision applies only to "consumer credit reporting agenc[ies]."[11]  *See* Cal. Civ. Code § 1785.11.

By repeatedly stating that a "consumer credit reporting agency" "shall," "may," or "shall not" take certain actions, *see id.* § 1785.11(a, b, c, e, f), it is plain

---

[11]  The CCRAA defines a "consumer credit reporting agency" as "any person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties . . . ."  Cal. Civ. Code § 1785.3(d).

that the California legislature intended this provision to impose duties and prohibitions on consumer credit reporting agencies only.  Nowhere does the provision state that a user of information shall do, or not do, anything. Nikogosian has not alleged (nor can she) that Cavalry is a consumer credit reporting agency that assembles or evaluates consumer credit information for the purpose of creating and furnishing consumer credit reports to third parties.  Her CCRAA claim must be dismissed.

### F.   Nikogosian's Common-Law Claims Fail Because She Has Not Alleged That Cavalry Published Any Information About Her

Finally, Nikogosian asserts claims for "Defamation-Libel" and "Invasion of Privacy/False Light."  Complaint (Doc. No. 3) at 13:14-14:21.  These claims must be dismissed because Nikogosian has not alleged, nor can she, that Cavalry improperly published information about her to any third parties.

"To prevail on a claim for defamation, plaintiff must show four elements: that defendants published the statements; that the statements were about plaintiff; that they were false; and that defendants failed to use reasonable care to determine the truth or falsity." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 450, 470 (2012).[12]  Stated slightly differently, "[d]efamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'"  *Price v. Operating Eng'rs Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011), quoting 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782.)

Like defamation, a "false light" invasion of privacy claim requires a publication.  "False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in

---

[12]  "Libel" is a species of defamation involving a written, as opposed to oral, publication.  *See id.*, citing Cal. Civ. Code § 45.

reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. (Rest.2d Torts, § 652E.)."  *Id.*

Nikogosian's common-law claims fail because she has not alleged any facts demonstrating that Cavalry published any information about her (let alone any false information).  Although Nikogosian maintains that Cavalry's "credit reviews resulted in a hard credit inquiry, which reflects on [her] credit reports" presently, Complaint (Doc. No. 3) at 9:5-6, and that Cavalry "still continues to maintain the record of unauthorized credit inquiries on [her] credit records," *id.* at 10:19-20, she does not allege that Cavalry actually published her credit reports.  On the contrary, Nikogosian explicitly states that her credit reports were "maintained" by "the three major credit reporting agencies, Experian, Equifax and Transunion." *Id.* at 8:24-25.  Nikogosian's claims for defamation and invasion of privacy must be dismissed.

## IV.  **CONCLUSION**

For the foregoing reasons, Cavalry respectfully requests that the Court issue an Order dismissing the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Unless Nikogosian demonstrates that she can amend her complaint to state a valid claim, the complaint should be dismissed with prejudice.


DATED:  May 18, 2012                    SIMMONDS & NARITA LLP
                                        JEFFREY A. TOPOR
                                        CHRISTOPHER SPAIN


                                        By:   s/Jeffrey A. Topor
                                              Jeffrey A. Topor
                                              Attorneys for defendant
                                              Cavalry Portfolio Services, LLC

Exhibit A

# SIMMONDS & NARITA LLP

ATTORNEYS AT LAW
44 MONTGOMERY STREET, SUITE 3010
SAN FRANCISCO, CALIFORNIA 94104-4816
TELEPHONE (415) 283-1000
FAX (415) 352-2625
www.snllp.com

JEFF TOPOR
DIRECT DIAL (415) 283-1007
EMAIL jtopor@snllp.com

May 11, 2012

**BY U.S MAIL AND**
**E-MAIL [JANET787@YMAIL.COM]**

Janet Nikogosian
1145 N. Central Ave., Unit 443
Glendale, CA 91202

      Re:    Nikogosian v. Cavalry Portfolio Services, LLC

Dear Ms. Nikogosian,

    This firm represents Cavalry Portfolio Services, LLC ("Cavalry") in connection with your lawsuit against that is pending in the United States District Court for the Central District of California, case number 12-cv-0464-RGK-AJW.

    Pursuant to Local Rule 7-3, I am writing to inform you that Cavalry intends to file a motion to dismiss the complaint filed January 23, 2012 under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that your complaint fails to state a claim upon which relief can be granted.

    Please call me if you wish to discuss this further.

                Very truly yours,

                Jeffrey A. Topor

**PROOF OF SERVICE**

I, the undersigned, declare:

I am employed in the City and County of San Francisco, California.  I am over the age of eighteen years and not a party to this action.  My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.

I am readily familiar with the business practices of my employer, Simmonds & Narita LLP, for the collection and processing of correspondence by mailing with the United States Postal Service and that said correspondence is deposited with the United States Postal Service that same day in the ordinary course of business.

On this date, I served a copy of the following document:

1)      **DEFENDANT CAVALRY PORTFOLIO SERVICES, LLC's NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

by causing such document to be placed in a sealed envelope for collection and delivery by the United States Postal Service to the addressee indicated below:

**VIA U.S. MAIL**

Janet Nikogosian
1146 N. Central Avenue Unit 443
Glendale, CA 91202
Plaintiff in pro per

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Francisco, California on this 18th day of May, 2012.

_____
Sally Koo